UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL CARLOS GARCIA,<br><br>  Petitioner,<br><br>  v.<br><br>STU SHERMAN, Warden, California Substance Abuse Treatment Facility,<br><br>  Respondent. | No. 1:13-cv-00448-SKO HC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner, a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254,[1] presents three grounds for habeas relief arising from a juror's belated recognition that she knew a police officer who was to testify in Petitioner's trial. Petitioner contends: (1) "The trial court prejudicially erred by failing to conduct an adequate inquiry into potential bias of a seated juror"; (2) "The trial court fail[ed] to conduct an adequate inquiry into the possible bias of the juror who knew the only witness"; and (3) "Assuming Appellant forfeited his right to claim an inadequate inquiry of the seated juror, this resulted in ineffective assistance of counsel."  Doc. 1 at 5-6.

///

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

Respondent counters that federal habeas review of the trial court's inquiry of the juror is barred by Petitioner's failure to object at trial and that the state court properly rejected Petitioner's claim of ineffective assistance of counsel. Having reviewed the record as a whole and applicable law, the Court denies the petition.

## I.    Factual Background[2]

At home in her apartment during the early morning hours of February 3, 2010, Fanny Rendon heard a man, later identified as Petitioner's co-defendant Cordova, knocking incessantly on her front door. Frightened, she telephoned her neighbor, Mayra Ochoa, who opened her door and shouted at Cordova. Cordova struck the door and a nearby window a bit longer before walking off and entering Ms. Rendon's backyard through an unlocked gate. Ms. Ochoa, who was still on her cell phone with Ms. Rendon, reported that she had seen the man enter Rendon's backyard. Ms. Ochoa then telephoned the police on her other phone.

Looking out a window from her kitchen, Ms. Rendon saw Cordova unscrew her porch light, open her back door, and enter her apartment. Ms. Rendon ran to Ms. Ochoa's apartment.

At approximately 1:30 a.m. on February 3, 2010, Bakersfield Police Officer Chris Ward, responding to the report of a prowler, drove to the area of Ms. Rendon's apartment and parked approximately one block away so he could approach on foot. When he was 20 to 25 feet from Ms. Rendon's apartment, he saw a man, whom he identified in court as Petitioner, enter her backyard through the open gate. He heard what sounded like an object falling to the ground, and within seconds, Petitioner emerged from the backyard. Officer Ward detained and handcuffed Petitioner.

///

---

[2] Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth Appellate District. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991). Accordingly, these facts are based on the findings of fact set forth in *People v. Garcia*, 2012 WL 969606 (Cal. App. Mar. 22, 2012) (No. F061480).

By then, another officer had arrived on the scene. He guarded Petitioner while Officer Ward entered the backyard. He found a filet knife in a bucket near the back door and found the weather stripping in the area of the back doorknob had been stripped away. Officer Ward then contacted Ms. Rendon and, thinking that Petitioner was the reported prowler, asked Ms. Rendon to return to her apartment to determine if anything was out of place.

When Ms. Rendon entered her apartment, she found Cordova "ducked down" in her kitchen. She ran screaming from her apartment, and Cordova came out after her. The officers subdued and arrested Cordova.

Ms. Rendon did not recognize the knife found in the bucket. Later, she found another knife that did not belong to her in a flowerpot in her backyard.

At trial, Ms. Rendon testified that she had seen Petitioner standing with Cordova outside a house across the street from her apartment at approximately 8:30 p.m. on February 2, 2010.

## II.   Procedural Background

On February 5, 2010, the Kern County District Attorney filed a complaint[3] charging Petitioner with (1) willful and unlawful entry of an inhabited dwelling house with the intent to commit larceny or any felony (Cal. Penal Code § 460(A)) and (2) possession of burglary tools (Cal. Penal Code § 466). The charges against Petitioner also included various enhancements and prior felony convictions.

Petitioner was tried in a bifurcated action before a jury in Kern County Superior Court in July 2010. On July 12, 2010, the jury found Petitioner guilty of count 1 and the enhancement allegation to be not true, and not guilty of count 2.

///

///

---

[3] The complaint also included charges, prior convictions, and enhancements relevant to Petitioner's co-defendant, Cordova, who pleaded guilty before trial.

3

Petitioner's sentencing was delayed by his successful *Marsden* motion[4] to dismiss his trial attorney. On December 3, 2010, the trial court denied Petitioner's motion to strike his prior convictions, and sentenced Petitioner to a fixed term of 13 years in prison. Following a resentencing hearing on December 8, 2010, the aggregate sentence remained 13 years' imprisonment.

Petitioner filed a direct appeal on December 10, 2010.

Petitioner, proceeding *pro se*, filed a petition for writ of habeas corpus in the Kern County Superior Court on January 12, 2011; the sole claim was insufficiency of the evidence. Later on the same day, Petitioner requested withdrawal of the petition after being informed that he was to be provided with counsel. The superior court dismissed the petition on February 3, 2011.

On August 4, 2011, Petitioner filed a second *pro se* petition for writ of habeas corpus in the Kern County Superior Court, claiming that the evidence was insufficient and that a biased juror had been allowed to continue serving on the jury. The superior court denied the petition on September 26, 2011. Petitioner then filed a petition in the Court of Appeals in which he raised the two issues forming the grounds for his petition: (1) "[T]he court failed to conduct an adequate inquiry of a juror upon learning that the juror was acquainted with a prosecution witness," and, in the alternative, (2) "[I]f that contention is deemed waived by his counsel's failure to raise the issue below, he (appellant) was denied his right under the United States Constitution to the effective assistance of counsel." *People v. Garcia*, 2012 WL 969606 (Cal. App. Mar. 22, 2012) (No. F061480). On March 22, 2012, the California Court of Appeals also denied the petition. *Id.*   The California Supreme Court denied review on June 13, 2012.

///

///

---

[4] Under California law, when a defendant requests substitution of court-ordered counsel, the trial court must conduct a hearing to consider the specific reasons for the request.  *People v. Marsden*, 2 Cal.3d 118, 123-25 (1970).

### III. Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. To do so, the Court must look to the holdings, as opposed to the dicta, of the

Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

**IV.     Inadequate Questioning of Biased Juror**

In his first two grounds for relief,[5] Petitioner contends that the trial court failed to question sufficiently a juror who knew a key police witness. Respondent contends that the State properly declined to consider these grounds because of Petitioner's failure to object at trial.

///

///

---

[5] The Court refers to two grounds since Petitioner set forth two grounds in the petition. Although the first two grounds are worded differently, no apparent substantive difference is evident between the two claims.

A. **<u>Factual Background</u>**

In the course of voir dire, the Court asked prospective jurors to indicate if they knew any of the prospective witnesses, including Bakersfield Police Officer Christopher Ward. Reporter's Transcript at 10-11 (July 8, 2010) (Lodged Doc. 13). Juror 1944768 did not raise her hand to indicate acquaintance with any witness. Before testimony began on July 8, 2010, however, Juror 1944768 approached the bailiff to report that Officer Ward was her neighbor. Reporter's Transcript at 45 (July 9, 2010) (Lodged Doc. 11). The juror explained to the trial judge that she knew her neighbor only by his first name and did not realize that her neighbor was Officer Ward until she saw him in the courthouse corridor. *Id.* at 45-46. The judge asked:

> Is there anything about the fact that you know him that is going to keep you from being fair and impartial in this case?
>
> In other words, he's going to testify obviously, but the key is, just like you heard the lawyers talk about and I talked about it, you apply the same standards of credibility to both Officer Ward's testimony and any civilian testimony.
>
> And you know he could be sworn to take the oath and say well, you know, I was on Mars last week and that would be easy for you to make that decision.
>
> The question is[--] is there anything about the relationship you have with him—because I have neighbors too and a lot of neighbors I don't even know their names, sad to say. Is there anything about the relationship you have with Officer Ward that that would make you feel that you would weigh his testimony stronger than a civilian witness just from the start?
>
> Do you see what I'm saying?
>
> A. Yeah.
>
> No, I don't think so.
>
> Q. And you understand that he can make a mistake like any other, like you can and I can, right?
>
> A. Right.
>
> Q. So you'll listen, and I'll give you a lot of guidelines, and you'll use your common sense and you'll use your life experiences

7

> and weigh his testimony the same way you would any other witness?
>
> A.   Right.  Yes.
>
> THE COURT:   Any problems, Mr. McKnight?
>
> MR. McKNIGHT:   No, your honor.
>
> THE COURT:   Mr. Revelo?
>
> MR. REVELO:   No, your Honor.  Thank you.
>
> THE COURT:   You're fine.  You can go back out and we'll bring you back in with the rest of the group.
>
> Reporter's Transcript at 46-47 (July 9, 2010) (Lodged Doc. 11).

The trial then proceeded.

**B.   State Court Determination**

The Court of Appeals first took note of Petitioner's argument in his *Marsden* motion to substitute counsel following his conviction and prior to sentencing:

> At the hearing on the motion that day, appellant told the court: " . . . I asked Mr. Revelo [defense counsel] to remove one of the [jurors] due to the fact that she lied when she—when they— [¶]When you asked her if they knew anyone on the witness list, they all said 'no.' They all testified under oath saying they did not know none of the witnesses.  [¶] The date of the trial, one of the [jurors] stood up and said she knew the witness, which is Officer C. Ward. That was her next door neighbor. [¶] You asked her if she would give me a fair trial, She stated, 'Yes.' But before she stated 'yes,' she looked at me, grinned at me, looked back at Officer Ward, and then she told you 'yes.'"
>
> *People v. Garcia*, 2012 WL 969606 at *2 (Cal. App. Mar. 22, 2012) (No. F061480).

After examining applicable California law governing a trial court's duty to conduct an inquiry regarding a juror's bias or personal knowledge of controverted facts, the appellate court held that Petitioner forfeited his claim that the trial court's inquiry was inadequate by failing to object. *Id.* at *4. Even if it could address the substance of Petitioner's claims, the court's factual inquiry indicated that the trial court appropriately questioned Juror 1944768 and determined that she could be fair and impartial, particularly in light of the tenuous connection between the Ward and the juror, who did not even know Ward's last name prior to the trial. Finally, it distinguished

the circumstances of this case from those in *McNeal*, on which Petitioner again relied, since in that case, the juror knew at least two witnesses and told other jurors that knowing the witnesses, who had apparently exerted pressure on her, "'would definitely affect her decision now.'" *Garcia*, 2012 WL 969606 at *5 (quoting *People v. McNeal*, 90 Cal.App.3d 830, 836 (1979)).

### C. Review is Procedurally Barred

Federal habeas review of a claim is barred when a state prisoner defaulted on his claim in state court pursuant to the state's adequate and independent procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To preclude federal review, the state court must have clearly and expressly disposed of the claim based on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989). The state court did so here.

Under California Evidence Code § 353, commonly referred to as the "contemporaneous objection rule," evidence is admissible unless there is an objection that has been clearly expressed and made when the evidence was introduced. *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002). In accordance with longstanding California law, the Court of Appeals held that because Petitioner did not object to the trial judge's questioning of Juror 1944768 or his determination that she could impartially proceed as a juror, Petitioner forfeited the right to appeal her retention as a juror.

"When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Nunnemaker*, 501 U.S. at 801. "[T]he failure of a habeas petitioner to observe a state's 'contemporaneous objection' rule results in a procedural default which precludes litigation of the alleged error in federal court." *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981), *overruled on other grounds*, *Ross v. Oklahoma*, 487 U.S. 81 (1988). Federal habeas review may occur only when a petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999) (quoting *Coleman*, 501 U.S. at 750). Petitioner asserts his personal conclusion that the trial court's questioning was inadequate and that

///

Juror 1944768 was biased against him, but he does not address the standards of review of habeas petitions.

"[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial . . . . But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure." *Id.* at 68 (quoting *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967)). That the Court of Appeals' decision and Respondent's response focus almost exclusively on California law, highlights that the state court made its decision based on state law.

### D. No Error in Retaining Juror Even it Petitioner Had Objected

Even if Petitioner had objected to the court's seating Juror 1944768, he would be unlikely to prevail if the trial court had retained the juror over his objection. Petitioner assumes that a juror who is acquainted with a witness must be dismissed from the trial. His assumption is buttressed by his belief that in response to the trial judge's questioning during voir dire, Juror 1944768 lied about knowing Officer Ward. He leaves unanswered the obvious question of why, if Juror 1944768 purposely lied during voir dire, she would approach the court the next morning to disclose her discovery that Officer Ward was her neighbor, Chris?

#### 1. No Due Process Violation

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising position." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215. Even in *Remmer v. United States* (347 U.S. 227, 230 (1954)), a case in which the court addressed the possibility that a juror had been offered a bribe, the Supreme Court required only that the trial court "determine the circumstances, the impact thereof upon the juror,

///

and whether or not they were prejudicial, in a hearing with all interested parties permitted to participate." *Smith*, 455 U.S. at 216.

"Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case." *Id*. at 216. The Supreme Court declined to presume that a juror would lie under oath regarding his or her ability to evaluate the evidence fairly and impartially, and left to the trial judge the discretion to evaluate the individual juror's testimony. *Id.* at 217 n. 7.

In a similar case, after the jury was seated in the trial considered in *Hedlund v. Ryan* (750 F.3d 793 (9th Cir. 2014)), a juror learned that she was distantly related to the victim. The trial court conducted a hearing in accordance with *Smith* at which the juror testified that her mother had inadvertently advised her that one of the victims in the pending trial was married to a cousin of the juror's stepfather. *Hedlund*, 750 F.3d at 805. The juror told her mother that she could not discuss the case and wrote a note to the judge about that conversation the following morning. *Id.* The juror disclosed that she had never heard of nor met her stepfather's cousin (who was deceased) and did not recognize the victim's current or maiden name. *Id.* She concluded, "I don't believe it would affect my ability to be fair and impartial, but I do not wish to compromise the proceedings in any way, so I wish to make the court aware of the situation." *Id.* The trial court conducted a hearing at which the juror testified that she had only a superficial relationship with her stepfather and reiterated her ability to remain fair and impartial. *Id.* The trial judge denied the defendant's motion to dismiss the juror for cause. *Id.*

In applying *Smith*, the Ninth Circuit explained:

> The Supreme Court recognized that hearings of this sort will "frequently turn upon testimony of the juror in question," but rejected the contention that "such evidence is inherently suspect." When a juror tries "as an honest man to live up to the sanctity of his oath[, the juror] is well qualified to say whether he has an unbiased mind in a certain matter." Lastly, the Court reiterated that, because this case was a § 2254 proceeding, the trial judge's findings are "presumptively correct" and cannot be overcome without clear and convincing evidence.

11

*Hedlund*, 750 F.3d at 806-07 (quoting *Smith*, 455 U.S. at 217-18) (internal citations omitted).

In short, a juror's casual acquaintance with a witness is not a sufficient ground to establish that the juror is biased. *See Tinsley v. Borg*, 895 F.2d 520, 528 (9th Cir. 1990) (citing case law so holding in various sister circuits).

### 2.   **No Actual or Implied Bias**

Petitioner contends that trial counsel failed to pursue more aggressive questioning of Juror 1944768, but he has never articulated specifically what counsel should have asked the juror. In response to Respondent's contentions that Petitioner needed "to explain what further questions counsel should have asked the juror, and how those questions would have changed the outcome" (Doc. 19 at 25), Petitioner contended that the *court* should have investigated "the entire nature of [the juror's] relationship with officer (Chris) Ward." Doc. 25 at 7. Petitioner never explains what further questioning would have revealed about the relationship between Juror 1944768 and Officer Ward beyond the juror's disclosure that Ward was a neighbor she knew only by his first name. Petitioner simply assumes that a juror's casual acquaintance with a witness indicates bias.

Actual bias exists when a juror concedes bias (e.g., "I do not trust individuals of that race or ethnicity") or when the inference of bias is so unmistakable or unavoidable that a challenge for cause would be sustained. *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 555-56 (1984). In *McDonough*, a product liability suit in which the plaintiffs sued on behalf of a child injured by a riding lawn mower, the Court considered a juror who had "lied" in voir dire by failing to respond to a question concerning severe injuries to themselves or a family member with disclosure of his own son's injury from an exploding tire. *Id.* at 550. The record shows no evidence that Juror 1944768 was actually biased.

If the court is to conclude that Juror 1944768 was biased, it must do so by inferring such bias because Juror 1944768 and Ward were neighbors. "Bias may be implied only in 'exceptional circumstances.'" *Fields v. Woodford*, 309 F.3d 1095, 1104 (9th Cir. 2002), amended on other grounds, 315 F.3d 1062 (9th Cir. 2002) (quoting *McDonough*, 464 U.S. at 556-57 (Blackman, Stevens, and O'Connor, JJ., concurring); 464 U.S. at 558 (Brennan and Marshall, JJ.,

concurring)).  Despite seemingly favorable language in the *McDonough* concurrences, the U.S. Supreme Court "has never explicitly adopted (or rejected) the doctrine of implied bias." *Fields*, 309 F.3d at 1104; *Tinsley*, 895 F.2d at 527.  On "rare occasions," "the Ninth Circuit has inferred or presumed bias" "in 'extreme' situations where the prospective juror's lies give rise to an inference of implied bias," and where there existed "the 'potential for substantial emotional involvement, adversely affecting impartiality.'" *Fields*, 309 F.3d at 1104.

The Ninth Circuit cases, however, address factual situations that are, even under a liberal reading, very close to those in which an inference of bias is so unmistakable or unavoidable that a challenge for cause would be sustained.  *See, e.g. Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (prospective juror in murder trial lied in voir dire by failing to disclose murder of her brother); *Tinsley*, 895 F.2d 520 (social worker-juror failed to disclose on voir dire counseling and testimony on behalf of rape victim); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (bias could be presumed where juror failed to disclose that his two sons were serving prison terms for heroin-related crimes); *United States v. Allsup*, 566 F.2d 68, 72 (9th Cir. 1977) (trial judge should have excused potential jurors who worked for another branch of the bank that defendants had allegedly robbed).

Ultimately, however, arguments that the Supreme Court has implicitly approved a doctrine of implied bias or that the Ninth Circuit recognizes exceptions when faced with certain fact patterns are immaterial.  This case concerns a petition for habeas corpus, governed by AEDPA, in which Petitioner can prevail only if he can show that "the state court's adjudication of his claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  Implicit Supreme Court approval and exceptions recognized by the Ninth Circuit are not clearly established Federal law, as determined by the Supreme Court of the United States.

**E.     Conclusion**

Claims one and two are procedurally barred from federal habeas review.

13

**V.      Ineffective Assistance of Trial Counsel**

As the third ground for habeas relief, Petitioner contends that if his first two claims are procedurally barred, then his trial attorney's failure to request a more extensive inquiry about Juror 1944768 constituted ineffective assistance of counsel. Respondent contends that in denying this claim, the state court reasonably applied the federal constitutional standard for determining ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 688 (1984).

**A.      State Court Decision**

The California Court of Appeals rejected Petitioner's claim of ineffective assistance of trial counsel as "sheer speculation." *People v. Garcia*, 2012 WL 969606 at *6 (Cal. App. Mar. 22, 2012) (No. F061480). The state court need not have cited federal case law instead of California law; it is sufficient that neither the reasoning nor the result of the state court contradicts it. As *Early* (537 U.S. at 8) permits, the state court analysis applied the federal standards forth in clearly established Supreme Court precedent even though it cited California case law.

The state court emphasized Petitioner's burden of proving ineffective assistance of counsel. *Id.* A petitioner can prove prejudice only by demonstrating a reasonable probability that the result of the proceeding would have been different but for counsel's defective performance. *Id.* Simply showing that the outcome might have been different absent counsel's errors is not sufficient. *Id.* The court rejected Petitioner's ineffective assistance claim, saying, "There is nothing in the record that affirmatively proves that the juror's assurances that she could discharge her duties should be disregarded." *Id.*

As discussed below, this Court agrees with the state court that Petitioner failed to carry his burden of proving ineffective assistance of trial counsel. Although the state court limited its analysis to the prejudice prong, Petitioner did not prove either element. Petitioner simply assumes that counsel's failure to object fell below an objective standard of reasonableness and that the outcome would have been different if further inquiry had been made of Juror 1944768.

**B.      The *Strickland* Standard**

"[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The purpose of the Sixth Amendment right to

1  counsel is to ensure that the defendant receives a fair trial. *Strickland*, 466 U.S. at 686. "The
2  benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so
3  undermined the proper functioning of the adversarial process that the trial cannot be relied on as
4  having produced a just result." *Id*.

5  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate
6  that his trial counsel's performance "fell below an objective standard of reasonableness" at the
7  time of trial and "that there is a reasonable probability that, but for counsel's unprofessional
8  errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland*
9  test requires Petitioner to establish two elements: (1) his attorneys' representation was deficient
10 and (2) prejudice. Both elements are mixed questions of law and fact. *Id.* at 698.

11 The scope of federal habeas review of a claim of ineffective assistance of counsel is
12 narrow. *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000). A habeas petitioner has the burden of
13 proving that the state court applied the *Strickland* standard in an objectively unreasonable
14 manner. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

### 1. Deficient Representation

16 To prove that an attorney's performance was deficient, a petitioner must establish that
17 counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at
18 688. This requires the petitioner to identify the acts or omissions that he alleges were not the
19 result of reasonable professional judgment. *Id.* at 690. In a federal habeas action, the court must
20 then determine whether considering the facts and circumstances as a whole, the identified acts or
21 omissions were outside the range of competent and professional legal assistance. *Id.* "We
22 strongly presume that counsel's conduct was within the wide range of professional assistance, and
23 that he exercised acceptable professional judgment in all significant decisions made." *Hughes v.
24 Borg*, 898 F.2d 695, 702 (9th Cir. 1990).

25 The standard for reviewing counsel's performance is "highly deferential." *Strickland*, 466
26 U.S. at 689. "[E]very effort [must] be made to eliminate the distorting effects of hindsight, to
27 reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from
28 counsel's perspective at the time." *Id.* The petitioner must overcome the presumption that the

challenged behavior constituted "sound trial strategy." *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  "The object of an ineffectiveness claim is not to grade counsel's performance." *Strickland*, 466 U.S. at 697.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.

Petitioner provides no basis by which a court could conclude that trial counsel's determination not to object to retention of Juror 1944768 was unreasonable and outside professional norms.  He argues only that he told his trial counsel to object to retention of Juror 1944768 based on his perception of Petitioner's facial expressions in the course of her testimony, but counsel did not comply with his wishes.  "Counsel . . . has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*  If defense counsel has made a strategic decision regarding tactics in voir dire, his or her failure to concede to the defendant's wishes is not ineffective representation. *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980).

### 2. Prejudice

"The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 692.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.*  As the state court found, the possibility that prejudice arose from the trial court's retention of Juror 1944768 was highly speculative.  This Court agrees.

The evidence against Petitioner was overwhelming.  The testimony of Ms. Rendon and Ms. Ochoa placed Petitioner and Cordova in the vicinity before the actual burglary, conversing together and observing Ms. Rendon's home.  Both Ms. Rendon and Ms. Ochoa observed Cordova incessantly banging on Ms. Rendon's door and front window in the early morning hours before he went to the back yard, removed the outside light, and entered the home.  Police officers testified to Petitioner's actions at a gate on the side of Ms. Rendon's home where he acted as look-out for Cordova: When Officer Ward approached, Petitioner entered the fenced-in back yard and made a noise which the jurors could reasonably have concluded was intended to warn

Cordova that the police had arrived. After Petitioner's arrest, Ms. Rendon discovered Cordova hiding in her kitchen.

The only defense asserted was that Petitioner was not involved in Cordova's burglary but simply happened to be walking past Ms. Rendon's home at the wrong time.

To establish ineffective assistance of counsel, Petitioner has the burden of affirmatively proving prejudice. *Strickland*, 466 U.S. at 693. He did not do so. Even assuming that trial counsel erred in failing to object to retention of Juror 1944768, the error was harmless. The proposition that the jury would have acquitted Petitioner if Juror 1944768 had been excused from the jury is farfetched and speculative.

### C. Conclusion

Petitioner has not carried his burden of proving ineffective assistance of counsel.

## VI. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.

///

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issue satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**VII.  Conclusion and Recommendation**

The Court hereby DENIES the petition with prejudice and declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:  **February 4, 2016**                    **/s/ Sheila K. Oberto**
                                                                        UNITED STATES MAGISTRATE JUDGE